## THE CHILBAR.

### MacKECHNIE v. DELAWARE TANKERS, Inc.

### REDHORST v. SAME.

#### Nos. 5, 7.

District Court, E. D. Pennsylvania.
Feb. 26, 1935.

Mortimer W. H. Cox, of Philadelphia, Pa., for libelants.

Leslie C. Krusen (of Krusen, Evans, Shaw & Campbell), of Philadelphia, Pa., for respondent.

WELSH, District Judge.

Two libels in admiralty were filed in this case, one in rem against the S. S. Chilbar, and one in personam against Delaware Tankers, Inc., in a cause of subtraction of wages upon which point the law of the case turns. The facts are not in dispute, the parties having agreed upon them by stipulation.

The Delaware Tankers, Inc., is the owner of the S. S. Chilbar, which is a merchant vessel of the United States of 5,030 tons gross measurement. She is operated as a tanker in the American Coastwise trade. She carries a full crew in accordance with the provisions of the federal laws.

The respondent, in addition to the crew of the vessel required by the certificate of inspection, has adopted a system of forming an additional department known as "maintenance and repair department." Men in this department perform duties having no direct connection with the navigation of the vessel. They perform work which is ordinarily done by mechanics on shore such as repair pipe lines, pumps, gear, and other machinery and equipment; clean tanks and bilges; chip and paint. The purpose is to prevent the vessel being tied up in port while such work is done so that the vessel can proceed immediately to sea after discharging her cargo, which usually takes less than a day.

The libelants were hired by respondent for this purpose and entered into special agreements of employment, covering the character of service above described. The hours of service were to be from 8 a. m. to noon, and from 1 p. m. to 5 p. m. They were not to be called upon to perform any duties in connection with the navigation of the ship or the operation of the engineroom, except in case of emergency. The wages were to be $62.50 and $100 a month and found, respectively. After the men were employed and while the ship was at sea they demanded that the master assign them to a watch in accordance with the provisions of the Act of March 4, 1915, c. 153, § 2, 38 Stat. 1164 (46 USCA § 673). The master of the ship refused so to do, and thereafter the libelants performed no services on board ship. They subsequently demanded their full wages. The master refused, setting up that their refusal to work unless assigned to a watch was a breach of the contract of employment.

It is important to state that in addition to the legal complement of crew the ship was properly officered and manned, and was seaworthy and properly equipped and supplied.

The federal act on the subject (March 4, 1915, c. 153, § 2, 38 Stat. 1164, 46 USCA § 673) is as follows: "The sailors shall, while at sea, be divided into at least two, and the firemen, oilers, and water tenders into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel."

The libelants clearly were not sailors, neither were they firemen, oilers, or water tenders. The purpose of the act above referred to was to provide for safety at sea. In making provision for such safety at sea it was necessary that the act incidentally

provide for watches, or hours of employment. The act is not primarily one for regulating hours of labor *of all persons* who might be employed in any capacity on a vessel. Libelants having been employed to do special work of the character described, having nothing to do with the navigating of the vessel, now, in violation of their agreement, invoke the provisions of sea-safety legislation and endeavor to have the court construe it as if it were entirely labor legislation on the part of the Congress. A very serious question arises as to whether it might not be essentially dangerous to consider men, mechanics, such as the libelants, to be worthy of having the responsibilities of a sailor on watch placed upon them. The sailor is a skilled man, trained in the usages and customs of the sea. Every sound, every object on the ship, and in the surrounding waters and sky has its meaning and significance to the trained seaman. These may be entirely lost to the landsman or to the ordinary mechanic, no matter how skilled he may be in his own particular line. Only by experience on ship as sailor or in the engineroom could a man qualify for the responsible duties of watch. Attempts to encroach upon the domain of the sailor and the engineroom should be discouraged. Should we accept the viewpoint of the libelants in this case, similar attempts of encroachment would be made by musicians on board ship, stewards, and others who might, or might not, have even had a day's experience as sailor or engineroom man.

The instant case is governed by the Supreme Court decision of O'Hara v. Luckenbach Steamship Company, 269 U. S. 364, 46 S. Ct. 157, 70 L. Ed. 313, in which Mr. Justice Sutherland laid down the principles that should govern the interpretation of the act of 1915. In accordance with the reasoning advanced in that opinion, this court holds that the libelants' case is not well founded.

In consequence of the stipulation of facts the court will not make any formal findings, but in view of the stipulation of facts we do make the following finding of law:

The master of a privately owned vessel of the United States is not required by section 2 of the Seamen's Act of 1915 (46 US CA § 673) to divide into equal watches men hired as members of the crew under special agreement to serve in a separate department known as maintenance and repair department as mechanics or laborers to repair and maintain the physical condition of the ship.

Decree may be submitted.